SCHOTT, Judge.
At the end of the trial of this case the issues were submitted to the jury on written interrogatories. The first two were concerned with liability, which is not in dispute on this appeal, and the third was as follows:
“What damages were incurred as a proximate result of the accident?
(a)General damages $_
(b) Medical expenses $_
(c) Cost of domestic services $_”
The jury inserted $2,000 as the answer to question 3(a) and zeros in answer to 3(b) and (c). In this appeal taken by plaintiff the principal issue is whether she is entitled as a matter of law to an award for medical expenses and the cost of domestic services since she was awarded general damages. She also contends that the general damage award was inadequate.
Following the accident on August 31, 1976, plaintiff sought treatment at the Baptist Hospital in New Orleans. On September 3, she consulted an orthopedist, Dr. Ma-nale, with complaints of pain and limited motion in her low back. Upon examination, Dr. Manale noted some muscle spasm in the back and diagnosed a severe sprain. He prescribed bed rest and medication and recommended against house work for three weeks. However, on September 8 Dr. Ma-nale hospitalized plaintiff because she complained of severe pain, was not improving and was believed to have blood in her urine. During the ensuing eight-day hospitalization she was given pelvic traction. By early October she appeared to be getting better but Dr. Manale felt she needed help with her household chores. By November 8 the doctor found her much better with a full range of motion and “dramatically improved.” She next saw Dr. Manale on December 17, 1976, when he found her “doing very well.” On March 4, 1977, he found that she had a good range of motion, with minimal symptoms of the back and having no significant problem. He also determined that she had just recently been hospitalized at Hotel Dieu Hospital for phlebitis. He next saw her on October 31, 1977, and he found that she had “about 90% of motion of her spine, almost normal.” Finally, on December 5, 1977, he learned that she had been hospitalized once again for phlebitis.
Rose Ella Lee testified that she did house work for plaintiff for about ten weeks after August 31 and was paid $755 for this work.
Defendants established that plaintiff had been in two previous automobile accidents, *1108 one on July 16, 1976, and the other on August 1, 1976. She filed suit for damages arising out of the July accident in November, 1976, and settled that case on August 4, 1977, for $2945. In November, 1976, she settled her claim arising out of the August 1, 1976, accident for $1415.
According to plaintiff, the first accident occurred when the automobile in which she was a passenger was struck by a police car from the rear. She consulted a Dr. Adams with complaints that her chest and neck, and possibly her back, were hurting. While she was going to Dr. Adams and having heat treatments she was again the victim of a rear end collision while a passenger in a taxicab and this time consulted a Doctor Figueroa. She testified that she complained to him about “my neck, the lower part of my back, the higher part of my back.” However, she later testified that her complaints were confined to her neck and shoulders and she was not sure about her back. Although she was still under treatment from Dr. Adams she simply did not go back to him once she started with Dr. Figueroa, and she was still under treatment by Dr. Figueroa when she had the present accident. She last saw him on September 3 when she told him she wanted to be discharged by him. Three different lawyers represented her in connection with the three claims. According to Dr. Manale, when he first took a history from plaintiff on September 3 he asked her “if she had any severe car wrecks or falls in the past and she said no.” He did not learn about the previous accidents until her present attorney wrote to him on October 31, 1977, and said:
"... In the deposition in the above matter it came out that in the history you obtained when you initially saw Mrs. Wilson she indicated she did not have any severe injuries to her neck or back. This is somewhat misleading due to the fact that she was involved in an automobile accident in 1973 and one in August, 1976, both relating to the cervical region and her shoulder. She did not consider it major as she was only treated with therapy and was not as severe as her current ailments. Therefore, this is why she made the response of no severe injury to her back. Also, she thought you were referring to the lumbar and lower areas of the back for which you were treating her. Please include this in your records for whatever purpose you deem appropriate.”
However, Dr. Manale further testified that he never heard of the accident of July, 1976.
Two letters were read to the jury, the first from Dr. Adams to plaintiff’s first lawyer concerning the injuries she sustained in the July accident; and the second from Dr. Figueroa to plaintiff’s second lawyer concerning her August 2, 1976, accident related injuries. Adams stated that plaintiff said she sustained injury to her neck, chest, breast, back, and left leg and he found, “back painful with restricted movement, worse on bending and stretching.” He continued to treat her almost daily in August until her last visit on August 31.
Figueroa reported that plaintiff did complain of pain in her lower back along with her neck. The record showed treatments to her neck almost daily in August, including August 31.
A copy of the petition plaintiff filed in the civil district court for $46,000 damages from the July accident is in evidence. The suit was filed on November 29, 1976, and contains the allegation that the accident caused injury to her “neck, chest, breast, back, and left leg, with accompanying neck spasms, restricted movement, and back pain, necessitating treatment and physical therapy totaling, at the present time, $425.00.”
In his charge to the jury the trial judge properly instructed them to consider both general and special damages, and he defined general damages to mean a sum which would fairly compensate plaintiff for pain, suffering, mental anguish and disability she sustained as a proximate result of the accident. He went on to say:
“In determining an award for general damages you are vested with much discretion. By special damages we mean *1109 actual out of pocket expenses which the plaintiff has sustained as a proximate result of the accident and these may include reasonable medical expenses and other expenses reasonably related to the accident. The plaintiff must prove both general and special damages, either past or future, by a preponderance of the evidence. For plaintiff to recover she must prove that her damages were proximately caused by the accident in question. Damages are proximately caused by an accident whenever it appears from the evidence in the case that the accident played a substantial part in bringing about or actually causing the damages and that the damages were either a direct result or a reasonably foreseeable consequence of the accident.”
In arguing entitlement to awards for medical expenses and the cost of domestic services plaintiff relies principally on Mora v. American Motors Leasing Corp., 364 So.2d 1343 (La.App. 4th Cir. 1978) in which the jury returned a verdict for the special damages but gave no award for general damages. We held that plaintiff was entitled to general damages based on our previous decision in Robinson v. General Motors Corporation, 328 So.2d 751 (La.App. 4th Cir. 1976). There the jury had given awards for special damages but no damages for pain and suffering. We held:
“But we do not have a general verdict, and an award of ‘none’ as damages for pain and suffering is not an exercise of discretion as to amount but a refusal of an award. If a jury deems missing work or incurring certain medical expenses unjustified, it may disallow those items, but it may not refuse general damages to plaintiffs with objective injuries.”
Conceding that the present case presents the opposite side of the coin which was present in the cited cases plaintiff argues once the jury decided that plaintiff was entitled to an award for general damages it may not refuse special damages sustained by plaintiff. However, we are not persuaded by this argument considering the record as a whole, and upon a close examination of the verdict form completed by the jury foreman.
This jury was faced with a plaintiff who had been in three different automobile accidents and made settlements for earlier accidents some time after she had the third or present accident, and while she was being treated by a third physician. Her credibility became highly questionable when the jury was told by Dr. Manale that he never heard of the July accident, and it developed that almost three months after she began seeing Manale for back problems she filed suit seeking damages for back problems resulting from the July accident. Furthermore, her testimony that she didn’t go back to Adams once she started seeing Figueroa was flatly contradicted by the records of the doctors showing that she was being treated by both of them throughout the month of August and many times by both on the same day. In effect, she was using three different sets of doctors and lawyers to push three separate claims for overlapping complaints and treatments. She also suffered from phlebitis which was apparently unrelated to the accident. It seems clear that the jury was not convinced that the medical expenses she claimed were the result of this accident.
Her evidence with respect to the domestic services did not support the $755 she claimed for this item. Although Dr. Ma-nale advised her to abstain from household chores for three weeks initially and in early October he thought that “it might be helpful ... if someone could help her do her household chores . .,” her claim, for the most part, is entirely dependent upon her own unsupported testimony that she could not do this work and required someone to do it for a duration of ten weeks. Thus, the evidence supports no more than a fraction of the $755 claimed, if any.
The form of the interrogatories may have confused the jury. Perhaps had they been asked to make an award for “pain and suffering or mental anguish” they may have been able to separate more easily such damages from medical expenses and the cost of domestic services. That form clearly shows that a zero was entered in the blank space provided for the general damages amount and was erased before the *1110 number 2,000 was inserted. It appears that they decided plaintiff was entitled to the $2,000 “general damages” to include some of the medical expenses and a portion of the cost of domestic services she was seeking. After they inserted the $2,000 figure for general damages they apparently decided, as an after thought, that they should insert zeros after medical expenses and cost of domestic services, and that was done in a different hand writing. Under all of these unusual circumstances, we conclude that the $2,000 award was intended as a general verdict. That amount is plainly within the jury’s much discretion.[1]
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

. This case was tried to a jury of eleven and the only explanation is the trial judge’s statement to them after twelve were impaneled but before the trial began: “Now we have had to excuse a juror for personal reasons. So you make sure that you stay in good health.” The absence of any objection from counsel was tantamount to a stipulation under C.C.P. Art. 1761. When the jury was polled after the verdict was announced it developed that two found contributory negligence on the part of plaintiff and one found no negligence on defendant, so that only eight concurred in the verdict. Although there was no express stipulation the parties apparently agreed to a verdict by eight in accordance with C.C.P. Art. 1795. However, before the jury retired the judge told them, “Now, you have 11 of you, 9 out of the 11 must concur to answer any of the questions on this page. It need not be the same 9 to answer each question but at least 9 of you must agree to answer any question.” Aside from the fact that nine was not the required number, the instruction was erroneous. If three had found no negligence on defendant, and a different three had found contributory negligence on plaintiff, only five would have agreed on liability. This could not support a verdict for plaintiff, and, yet, that was the import of the judge’s instructions.